**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

ELEPHANT BUTTE IRRIGATION DISTRICT
OF NEW MEXICO, EL PASO COUNTY WATER
IMPROVEMENT DISTRICT NO. 1, OF TEXAS,

        Plaintiffs,

      vs.                                                                      Civ. No. 90-95 JP/JHG

UNITED STATES DEPARTMENT OF THE
INTERIOR; et al.,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

On April 1, 2002 the Federal Defendants filed a Motion for Summary Judgment (Doc. No.

336).  The State Defendants filed a memorandum of law in support of the Federal Defendants'

motion.  On June 3, 2002, Plaintiffs filed a Motion to Strike the State Defendants' Memorandum

of Law along with their response to the State Defendants' memorandum of law (Doc. No. 339).

Based on a careful review of the pleadings, the prior opinions and orders of this Court and of the

Tenth Circuit Court of Appeals, other relevant case law, the exhibits of record, and the arguments

of counsel, the Court concludes that the motion for summary judgment should be GRANTED in

part and DENIED in part.

As a preliminary matter, Plaintiffs request that the State Defendants' Memorandum in

Support of the United States' Motion for Summary Judgment be stricken, or in the alternative

that the State Defendants must be bound by this Court's decision as to Count II.  It was proper

for the State Defendants to file their memorandum brief, and there has never been a suggestion

that they will not be bound by the Court's decision.  Therefore, Plaintiffs' Motion to Strike will be

denied.

### Background and Procedural History.

The Rio Grande Project ("the Project") is a federal reclamation project undertaken by the

Bureau of Reclamation ("BOR") in the early years of the twentieth century.  It was authorized by

Congress in 1905, 33 Stat. 814.  Initially the Project was directed at the irrigation needs of

farmers in the lower Rio Grande valley of New Mexico and the upper Rio Grande valley of Texas,

and that remains its primary purpose.  Over the years, the Project has been utilized for delivery of

water to Mexico under an international treaty, for power generation needs and recreation uses,

and for municipal water needs for Las Cruces, New Mexico and El Paso, Texas.  Other incidental

uses of Project lands have included grazing and development of township and residential sites.

The Complaint in this case was filed in 1990 by Plaintiff Elephant Butte Irrigation District

("EBID"), with El Paso County Water Improvement District No. 1 ("El Paso") as an involuntary

Plaintiff.  Federal Defendants are the United States Department of the Interior ("DOI") and its

Secretary, and two officials of the United States Bureau of Reclamation ("BOR").  The remaining

State Defendants are the Governor of the State of New Mexico and the Secretary of the New

Mexico Energy, Minerals and Natural Resources Department.[1]

The case has proved to be a complex one.  Over the years the judge to whom the case was

assigned, the late Honorable Howard C. Bratton, entered numerous orders and two major

memorandum opinions.  The case has been appealed twice to the Tenth Circuit Court of Appeals,

---

[1] The Court previously dismissed the State of New Mexico and the New Mexico Department of Energy,
Minerals and Natural Resources on Eleventh Amendment immunity grounds.

which affirmed Judge Bratton's rulings.  It is here on remand from the Tenth Circuit for resolution

of the remaining issues.  All issues in all the counts of the Complaint have been resolved, save

those raised in Count II.  The Court will discuss two other counts, Count I and Count VI, insofar

as they bear on the issues remaining in Count II.

In Count I, the water districts contended they were entitled to net profits from grazing

leases on Project lands under Subsection I of the Fact Finder's Act, 43 U.S.C. § 501.  The grazing

leases had been issued by the United States Bureau of Land Management ("BLM") or its

predecessor agency the United States Grazing Service under a series of memoranda of

understanding with BOR that were executed between 1941 and 1983.  In a Memorandum Opinion

and Order filed September 3, 1992, the Court granted summary judgment to Plaintiffs on Count I,

holding that Plaintiffs were entitled to receive credits for net profits generated from grazing leases

on Project lands under Subsection I of the Fact Finder's Act.  The Court ordered the Secretary of

Interior to come up with a calculation of net profits; that issue was resolved on October 17, 1996,

when Plaintiffs and DOI stipulated to the amount of the Subsection I net profits for grazing leases

under Count I.

The current Memorandum of Understanding ("MOU") between BOR and BLM, which

was executed in 1987, contains a different way of calculating profits from grazing leases that

virtually ensures no net profits will be realized.  In October 1993, Plaintiffs filed an Amended

Complaint adding Count VI, which sought termination of the current MOU because it deprives

Plaintiffs of credits under Subsection I for net profits on the grazing leases.  In a April 23, 1997

Memorandum Opinion and Order, the Court granted the Federal Defendants' motion for summary

judgment on Count VI, holding that the Federal Defendants had no fiduciary duty to generate net profits for the water districts under the grazing leases.

In Count II, Plaintiffs challenged the United States' recreation lease with the State of New Mexico under which all lease revenues are assigned to the State. The current recreation lease was executed in 1973 for a 50-year term. It replaced the first recreation lease which was executed in 1964. The lease allows for the creation and operation of the Elephant Butte State Park and the Caballo Lake Park on 25,730 acres of Reclamation land in the Rio Grande Project. Some of this land had previously been under grazing leases that had produced net revenues that were credited to Plaintiffs under Subsection I of the Fact Finder's Act. The two State Parks are operated and maintained by the State of New Mexico. None of the revenues generated by the State under the 1973 recreation lease are to be paid to the United States, effectively depriving Plaintiffs of any credits for net profits under Subsection I of the Fact Finder's Act as to those lands covered by the recreation lease.

Plaintiffs alleged in Count II that the net profits generated by the State of New Mexico under the recreation lease should be credited to the water districts under Subsection I of the Fact Finder's Act. It its April 23, 1997 Memorandum Opinion and Order, the Court ruled that the water districts are entitled to continue receiving Subsection I credits, subject to the State's necessary expenses in administering, operating, and maintaining the recreational facilities. The Court denied the Federal Defendants' and the State Defendants' joint motion for partial summary judgment on Count II, and granted Plaintiffs' cross-motion for partial summary judgment on Count II, stating:

> [T]he Court finds that the Districts are entitled to continue
> receiving Subsection I credits, at least credits equivalent to what
> they were previously entitled to prior to the development of the
> recreational facilities.  However, the Court also recognizes the
> State's need to continue to receive funds to administer, operate,
> and maintain the recreational facilities.  Accordingly, Defendants'
> Joint Motion for Partial Summary Judgment is denied and Plaintiffs'
> Motion for Partial Summary Judgment is granted.  The Court will
> set a hearing to reform the lease to provide the Plaintiffs with
> revenue credits as mandated by Subsection I of the Fact Finder's
> Act.

Mem. Op. & Order, Apr. 23, 1997 at 14-15.

Plaintiffs filed a motion for clarification in which they maintained there was an

inconsistency in the Court's rulings on Counts II and VI.  On June 24, 1999 the Court issued a

clarification of its April 23, 1997 Memorandum Opinion and Order, but refused to amend or alter

its previous rulings.  In its clarification Order, the Court stated:

> The Districts' rights are to annual credits against operation
> and maintenance charges from **net revenues** generated from
> Project lands pursuant to Subsection I of the Fact Finder's Act.  In
> response to Defendants' Motion for Summary Judgment as to
> Count VI, Plaintiffs conceded that no profits were being generated
> under the existing management plan.  Therefore, although the Court
> found that Plaintiffs were entitled to Subsection I credits under the
> MOU, the Court deferred to the Secretary's broad authority to
> manage project lands, which is a matter completely within the
> Secretary's discretion.  The fact that no profits are being generated
> under the MOU does not mean that an inconsistency exists between
> the Court's ruling regarding Count II and Count VI.

Order, June 24, 1999 at 3 (emphasis in original).

On appeal, Defendants challenged the Court's summary judgment for Plaintiffs on Count

I, and Plaintiffs cross-appealed the Court's resolution of Count VI in favor of Federal Defendants.

In an October 21, 2001 opinion, the Tenth Circuit Court of Appeals affirmed the District Court

on both issues.  Elephant Butte Irr. Dist. of New Mexico v. United States Dep't of Interior, 269

F.3d 1158 (10th Cir. 2001).  Thus, it is established in this circuit that the Fact Finder's Act has

not been repealed by subsequent legislation and still applies to Project lands, and that Plaintiffs'

right to credits under the Fact Finder's Act is an entitlement which does not carry with it any

fiduciary duty on the part of the Federal Defendants to generate or maximize profits for the

benefit of the water districts.

　　　After the case was reassigned to me, on November 15, 2001 I wrote to the parties

requesting their input on the status of the case and the issues remaining after the Tenth Circuit's

decision.  After receiving written responses, I held a status conference on January 30, 2002.

Plaintiffs contended that wide-ranging discovery was warranted, while the Defendants asserted

that no discovery was needed or allowed.  Thinking that more detailed written submissions would

assist the Court in deciding the remainder of the case, I invited the Federal Defendants to file the

present motion for summary judgment.

　　　**The Present Dispute.**

　　　The Federal Defendants and the State Defendants first argue that reformation of the

recreation lease is not appropriate, essentially suggesting that Judge Bratton decided Count II

incorrectly, or that the Tenth Circuit's opinion changes the basis of Judge Bratton's decision.

They contend that the lease should not be reformed to grant credits to Plaintiffs for revenues

generated by the recreation lease because Plaintiffs are only entitled to net revenues from grazing,

not recreation.  Plaintiffs support Judge Bratton's rulings on Count II, and maintain that they are

entitled to credits for all net profits, if any, generated under a reformed recreation lease.

The State Defendants separately argue that an order modifying the recreation lease to require the State to pay net profits to the United States is inappropriate because it is not mandated by federal law and would conflict with state law.  The State Defendants contend that payment of the State's net profits to the United States would constitute an expenditure made without legislative approval and would interfere with discretionary acts of State officials.

Alternatively, Defendants contend that if the recreation lease should be and is modified, the modification should recognize that there is no obligation on the part of the federal government to maximize revenues or to produce net profits from the recreation lease.  They contend that crediting of net profits to Plaintiffs under Subsection I of the Fact Finder's Act is only required when and if profits are generated in the normal course of business, given the State's need for revenues to maintain and operate the State Parks.  Although Plaintiffs recognize that the Tenth Circuit's affirmance of this Court's disposition of Count VI means that the federal government has no fiduciary duty to produce net profits under the recreation lease, they insist that the Court should impose some sort of business acumen standard, under which it would somehow behoove the United States to require the State of New Mexico to generate profits, so that credits would accrue to the benefit of Plaintiffs.  Plaintiffs also contend that at a minimum, they are entitled to receive credits in the amounts they had been receiving under grazing leases prior to the execution of the recreation lease.

Two additional points made by the Federal Defendants do not appear to be contested by Plaintiffs.  First, they suggest that the reformed lease should contain a clause stating that the Secretary of Interior is responsible for determining whether the recreation lease produces a net profit to be credited to Plaintiffs under Subsection I.  Second, the Federal Defendants maintain

7

that state revenues are not federal revenues, and that the term "net profits" in Subsection I refers

only to moneys paid to the federal government which are in excess of the federal government's

costs in administering the recreation lease.

   *1.  Appropriateness of reformation of recreation lease.*

Subsection I of the Fact Finder's Act provides:

> Whenever the water users take over the care, operation, and
> maintenance of a project . . . the total accumulated net profits, as
> determined by the Secretary [of Interior], derived from the . . .
> leasing of project grazing and farm lands . . . shall be credited to the
> construction charge of the project . . . and thereafter the net profits
> from such sources may be used by the water users to be credited
> annually, first, on account of project construction charge, [and]
> second, on account of project operation and maintenance charge
> . . ..

43 U.S.C. § 501.

Defendants contend that the recreation lease should not be reformed because only grazing

and farm leases give rise to Subsection I credits, not the recreation lease.  Plaintiffs, on the other

hand, interpret the Fact Finder's Act to mean that Subsection I benefits flow from any leases on

Project grazing and farm lands.  This issue was considered by Judge Bratton, who apparently

believed that Subsection I of the Fact Finder's Act applies not only to grazing leases, but to the

recreation lease as well.  Judge Bratton found:

> The lands encompassed by the lease agreement with the State
> Defendants historically constituted grazing and farm lands of the
> Rio Grande Project, and the Project was historically credited with
> the 'net profits' from these lands.

Mem. Op. & Order, April 23, 1997 at 8-9.  Thus, Judge Bratton agreed with Plaintiffs'

interpretation of the statute.  This is a reasonable interpretation of the language of the statute, and

it has not been negated by the Tenth Circuit's opinion, notwithstanding Federal Defendants'

complex, extensive, and forceful arguments to the contrary.  It is clear that Judge Bratton

intended to reform the recreation lease to provide credits to Plaintiffs for any net profits from the

recreation lease, and I see no reason to alter Judge Bratton's ruling on this point.

The State Defendants argue that an order modifying the recreation lease to require the

State to pay net profits to the United States would conflict with state law because it would result

in an expenditure of state funds without legislative approval in violation of N. M. Stat. Ann.

§ 16-2-11(J), which provides:

> Any acquisition of land or any interest in land for state park or
> recreation purposes shall be approved by the legislature prior to the
> execution of a written agreement binding the state to expenditure of
> funds for acquisition or development of state parks or recreation
> areas.

However, the reformed lease would not "bind" the State to expend funds to acquire or develop

the recreation areas in the state parks; it would only bind the State to pay net profits, if any, to the

United States.  Moreover, a clause in the existing lease gives the State the option to terminate the

lease without cause upon proper notice to the BOR.  Pl. Ex. 2, Section 20 (c), at 10.  For the

same reasons, the State Defendants' other argument, that reformation of the recreation lease

would interfere with discretionary acts of State officials, does not negate the propriety of

reforming the recreation lease.  Additionally, as noted by the Tenth Circuit in its ruling on

application of the *Ex parte Young* doctrine in this case, discretionary acts by state officials that

violate federal law are not afforded deference.  Elephant Butte Irr. Dist. of New Mexico v. Dep't

of Interior, 160 F.3d 602, 611 (10th Cir. 1998).

   *2. No duty of Secretary of Interior to produce net profits under recreation lease.*

   Plaintiffs suggest that even though the Court cannot require the Secretary to maximize

revenues or generate profits on the grazing leases, the Court can somehow reform the recreation

lease to require profits.  Plaintiffs note that Judge Bratton found that under Count VI the

Irrigation Districts had failed to rebut evidence that no net profits could be generated where

grazing leases were subject to nationally-determined grazing fees and subject to new types of

expenses for improvements and management by BLM; also, competitive bidding of grazing leases

on Project lands would not bring greater revenues than are now being generated.  *See* Mem. Op.

& Order, April 23, 1997 at 15-18.[2]  These factual matters, however, were merely alternative

findings.  The basis for Judge Bratton's ruling on Count VI, and for the Tenth Circuit's affirmance

of that ruling, was that the United States owes no fiduciary duty to the Irrigation Districts to

produce profits under the grazing leases, a ruling that applies equally to the recreation lease.

Lease reformation under Count II may provide relief for Plaintiffs because as a factual matter the

possibility exists that profits may be generated under the recreation lease in the future.  Under this

interpretation, the only reformation allowed is simply to require that if there are net profits in the

future, those net profits must be credited to Plaintiffs.

   Even though they acknowledge the import of the ruling regarding lack of fiduciary duty

under the grazing leases in Count VI on their claim under the recreation lease in Count II,

Plaintiffs suggest that there exists a "non-fiduciary but nevertheless significant responsibility of the

Secretary to manage Project lands in a certain manner."  Pl. Resp. at 22.  Plaintiffs state that this

---

   [2] Plaintiffs also observe that no evidence has been presented that the State of New Mexico is not generating net revenues from the fees it charges at the state parks.  These fees include entrance fees, camping fees, cabin lot leases, concession fees, etc.

alleged responsibility requires exploration at the reformation hearing, and they suggest that its source is contained in the "statutory guides" of the 1924 Act and/or the 1926 Act.  Id.  Plaintiffs interpret the language in the 1924 Fact Finder's Act requiring the crediting of "the total accumulated net profits," 43 U.S.C. § 501, to impose not a fiduciary duty but rather a business standard on the Secretary in managing Project lands.  In the 1926 Omnibus Adjustment Act, 43 U.S.C. §§ 423 - 423g, 610, Congress directed the Secretary to administer the Act for the rehabilitation and future success of the several reclamation projects by placing the projects on "a sound operative and business basis."  43 U.S.C. § 432f.  Plaintiffs' theory is that because businesses make profits and governments do not, the Court can somehow reform the recreation lease to impose a requirement to make profits on the Secretary under the recreation lease. Plaintiffs insist that the Secretary must consider their rights and entitlements in granting the recreation lease, and must redirect revenues from the State to the credit of the Irrigation Districts.

This Court rejects Plaintiffs' theory.  The Tenth Circuit has already found that the combination of these two Acts does not impose a fiduciary duty on the Secretary to generate profits for the Irrigation Districts.  The same applies to Plaintiffs' theory that the Acts create a business standard, or that they give some sort of mandatory guidance to the actions of the Secretary.  This Court cannot order the United States to require profits to be generated by the State under the recreation lease any more than it could order profits to be generated under the grazing leases.  Such an order is precluded under the analysis of Count VI performed by this Court and affirmed by the Tenth Circuit Court of Appeals.  Thus, the reformed recreation lease will not require the Secretary either to generate revenues or to maximize profits.

*3. No minimum credits for Plaintiffs.*

Plaintiffs argue that there is a "floor" for credits under a reformed recreation lease, which they suggest is the amount of credits from grazing leases and other sources that was being received by the Irrigation Districts prior to the 1964 recreation lease.  Plaintiffs seem to assert that Judge Bratton meant to reform the recreation lease at least to reinstate credits the Irrigation Districts had been receiving before the revenue sources that produced the credits were turned over to the State under the recreation lease.  Plaintiffs also suggest that Judge Bratton perhaps intended to provide even more relief for the Irrigation Districts.  Plaintiffs base their claims on the language in Judge Bratton's memorandum opinion, quoted above, which mentioned the credits Plaintiffs were entitled to prior to development of the recreational facilities, and recognized the State's need for revenues related to administration, operation, and maintenance of those facilities. Plaintiffs contend that the Court should hear evidence on what the Irrigation Districts believe they are entitled to under this theory of the case, as well as on the State and Federal Defendants' positions.

This Court does not agree that Plaintiffs are entitled to certain minimum credits.  The extent to which credits were being received by the Irrigation Districts prior to the first recreation lease in 1964, which turned over sources of revenue to the State, is immaterial.  Unless there is a duty on the part of the United States to produce net profits, there can be no minimum credits due to Plaintiffs under Subsection I of the Fact Finder's Act.

*4. Other matters.*

Two final matters brought up by the Federal Defendants and not contested by Plaintiffs should be addressed.  First, the Federal Defendants maintain that the only relevant net profits are

those accruing to the United States.  The Court agrees.  Count II requests that Plaintiffs be credited in the amounts of the State's net profits.  *See* Complaint, ¶¶ 57, E at 20, 21 (as amended).  If the United States has expenses related to the recreation lease, those expenses may be deducted from whatever revenues may be turned over to the United States by the State under the reformed lease for the purpose of determining the United States' net profits.  The credits to Plaintiffs under Subsection I of the Fact Finder's Act will be in the amount, if any, of the United States' net profits.

Second, the Federal Defendants want the reformed lease to specify that the determination of "net profits" will be made by the Secretary.  The Court sees no harm in including a clause of this type in the reformed lease.

*5. Summary.*

The Court will have the parties propose drafts of the pertinent provisions of the reformed lease, informed by the rulings in this Memorandum Opinion.  To summarize, the recreation lease will be reformed to require the State to account for and to turn over to the United States any net revenues the State might realize from its operation of the State Parks after deducting from gross revenues the State's expenses for administration, operation, and maintenance of the recreational facilities.  There is no duty on the part of the United States to generate profits, or to require the State of New Mexico to generate profits, under the recreation lease.  The reformed lease may contain a clause providing that the Secretary of Interior is responsible for determining whether the United States receives a net profit under the recreation lease.

No minimum credits are to be granted to Plaintiffs under Subsection I of the Fact Finder's Act based on net profits that used to be credited before the 1964 recreation lease.  Plaintiffs'

credits under Subsection I of the Fact Finder's Act will be in the amount, if any, of the United States' net profits under the recreation lease. The United States must credit Plaintiffs with any net profits the United States might realize from lease revenues it receives from the State, after deducting any recreation lease-related expenses the United States may incur.

THEREFORE IT IS ORDERED that the Federal Defendants' Motion for Summary Judgment (Doc. No. 336) is hereby granted in part and denied in part.

IT IS FURTHER ORDERED that Plaintiffs' Motion to Strike the State Defendants' Memorandum of Law (Doc. No. 339) is denied.

IT IS FURTHER ORDERED that no later than February 10, 2003, the parties must present a draft of pertinent new provisions to be included in a reformed recreation lease prepared in conformity with the Court's rulings in this Memorandum Opinion. If the parties are unable, after good-faith efforts, to present a mutually acceptable draft, then they must present by February 10, 2003 separate drafts they believe conform to this Court's rulings.

_____

CHIEF UNITED STATES DISTRICT JUDGE