**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

ELEPHANT BUTTE IRRIGATION DISTRICT
OF NEW MEXICO, EL PASO COUNTY WATER
IMPROVEMENT DISTRICT NO. 1, OF TEXAS,

        Plaintiffs,

    vs.                                                                                    Civ. No. 90-95 JP/KBM

UNITED STATES DEPARTMENT OF THE
INTERIOR; et al.,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

On November 2, 2005 Federal Defendants filed a Motion To Approve Accountings (Doc. No. 398). On June 27, 2006 the Court held a hearing to discuss various questions about the motion. Based on a thorough review of the pleadings, exhibits, and arguments of counsel, the Court will grant the motion, in part, and approve the accountings. The Court will then enter final judgment on Count II and dismiss the case.

**Background**

In Count II of the Complaint, Plaintiffs Elephant Butte Irrigation District ("EBID") and El Paso County Water Improvement District No. 1 ("El Paso No. 1") challenged the United States' recreation lease with the State of New Mexico under which all lease revenues are assigned to the State. Plaintiffs sought equitable relief to provide them with revenue credits as mandated by Subsection I of the Fact Finder's Act, 43 U.S.C. § 501. They also requested that the recreation lease be reformed to require prospective compliance with the Act, and to require an annual accounting to Plaintiffs. The late Honorable Howard C. Bratton ruled in favor of Plaintiffs on

Count II (Doc. No. 283 at 8-15), and this Court found that Judge Bratton's intention was "to reform the recreation lease to provide credits to Plaintiffs for any net profits from the recreation lease . . .." Mem. Op. & Order, Jan. 16, 2003 (Doc. No. 349), at 9.

On December 19, 2003, this Court ordered the Federal Defendants to "perform and provide to Plaintiffs an accounting of federal net profits under the recreation lease from January 25, 1984 to the present." Mem. Op. & Order (Doc. No. 385) at 19. The Court also stated that "[i]f Plaintiffs have a dispute about the manner in which the accounting is done, or with the accuracy of the accounting, they may bring that to the Court's attention after good-faith attempts to negotiate settlement of the matter. No discovery will be allowed at this time." Id. Further, the accounting was not to be carried out immediately because the Court required the parties to enter mediation with Magistrate Judge Karen B. Molzen, and in an accompanying letter the Court identified several Count II-related issues, some of which could affect the accounting, that might be amenable to mediation.

Mediation was unsuccessful in resolving the remaining issues, and in a September 26, 2005 letter to counsel, this Court gave Federal Defendants a deadline to prepare the accounting, and to file a motion to approve the accounting.

> The accounting should identify all revenue sources and expenses in any way connected with the recreation lease, taking an expansive view, and then specify which of the listed items the Secretary believes should be included in the accounting and which should not, and why. If Plaintiffs object to any part of the accounting, they may file a response. In their response, Plaintiffs should give the reasons why they disagree with any portions of the proposed accounting, along with what discovery, if any, they believe they need on any of the points identified or that have failed to be identified in the accounting.

Letter from Court, 9/26/05, ¶ 3 at 2.  On July 5, 2006 the Court entered its Order Reforming the Recreation Lease.

Plaintiff El Paso No. 1 did not file a response to the motion.  Therefore the following discussion pertains to those issues raised by EBID in its response.

**Discussion**

The Federal Defendants filed their motion and provided the accounting in two parts.  The first part, presented in Exhibit A, accounts for the State of New Mexico's recreation lease revenues and expenses for the Elephant Butte and Caballo Lake State Parks from 1990 to the present.[1]  In each of these years, Exhibit A shows that the State incurred a net loss in its operation of the two State Parks.  Additionally, the Federal Defendants assert that even though records are not available for the years before 1990, it is reasonable to assume that the years 1984 to 1989 also would have resulted in combined losses for the two parks.  The second part of the accounting, presented in Exhibit B, accounts for all net revenues received by the United States Bureau of Reclamation ("BOR") for the Rio Grande Project from 1984 to the present, including the net losses from the State recreation lease and other net revenues and losses from miscellaneous other sources.

*1. EBID's General Objections to Accountings*

EBID contends that the accountings do not follow generally accepted accounting procedures ("GAAP"), they are not authenticated as required by the Federal Rules of Evidence, they are not signed and do not indicate who prepared them, and they do not contain an

---

[1] In accordance with the State of New Mexico's regulations concerning retention of records, records prior to 1990 were not retained by the State and are unavailable.  When this case was filed in 1990, the State began retaining records.  Aff. R. Torres, Fed. Def. Ex. C ¶¶ 6-12 at 2-3.

explanation as to their meaning.  Therefore EBID objects to the admissibility of the accountings or to their use by the Court in any way.  EBID also objects to the denial by the Court of any discovery as to the accounting documents,[2] and to the lack of provision for a hearing or a trial on these matters at which EBID could cross-examine witnesses.  Additionally, EBID objects to the procedure by which the accountings have been presented to the Court, as attachments to a motion to approve the accountings, instead of by a motion for summary judgment.  EBID objects generally to all facts presented in the accountings, and contends that the accountings are invalid in their entirety.  EBID also complains that it was only given 12 business days to review, digest, interpret and respond to the accountings.  EBID argues that an outside accountant could never make any sense of the accountings or the backup documents without full discovery.  Finally, EBID notes that this Court's previous rulings guarantee that a legitimate accounting of recreation lease revenues will show no net profits from which the Federal Defendants would owe Subsection I credits to EBID under 43 U.S.C. § 501.

EBID's first set of objections has to do with the admissibility of the accountings.  Raphael Torres, the state employee who prepared Exhibit A, certified Exhibit A as true and accurate.  *See* Aff. Torres, Ex. C.  Jeffrey Gosling, the federal employee who prepared Exhibit B, certified Exhibit B as true and accurate.  *See* Decl. Gosling, Ex. D.  EBID's complaint that the accountings do not reflect that they were prepared in accordance with GAAP is not valid.  The accountings were prepared in accordance with the standards applicable to federal agencies approved by the United States Treasury Department.  Thus, the accountings are authenticated and constitute

---

[2] EBID acknowledges that the Federal Defendants provided numerous backup documents for the accountings, but it contends that the backup documents were not accompanied by an explanation, and it comments that they "comprise only bureaucratic gobbledygook."  EBID Resp. at 6.

4

admissible evidence that can be considered by the Court in ruling on the motion to approve the accountings.

The next set of objections concerns possible factual disputes. EBID objects that the meaning of the figures contained in the accountings is unclear. The brief filed by the Federal Defendants explains the meaning of the items in the accountings. EBID has failed to identify what it cannot understand about any of the items in the accountings. Additionally, EBID does not allege that it attempted in good faith to have any part of the accountings it did not understand explained by the Federal Defendants. EBID complains about the short time to respond to this motion, but it has not requested additional time. Finally, counsel for EBID has made conclusory statements that an accountant could not understand the accountings or the backup documents without full discovery, but EBID has failed to attach an affidavit of an accountant or other financial expert to this effect.

In objecting to the denial of discovery and an evidentiary hearing, and in objecting to the filing of a motion for approval of accountings instead of a motion for summary judgment, EBID misperceives the nature of the accounting ordered by the Court. Judge Bratton contemplated a hearing to determine how the lease should be reformed, not necessarily a trial. This accounting is part of the equitable relief that accompanies the reformation of the recreation lease. In exercising its broad discretion in fashioning equitable relief, the Court has determined that the procedure it has employed is appropriate. EBID has been afforded informal opportunities to discover the facts that underlay the accountings, and either has failed to avail itself of those opportunities, or has done so and not found anything amiss. Although Federal Defendants have offered to allow a limited deposition of Raphael Torres, the principal preparer of the information underlying Exhibit

A, the Court does not believe that this or any other discovery is necessary or appropriate. EBID has failed to show a legitimate need for discovery on any of the items in Exhibit A or Exhibit B. Further discovery or an evidentiary hearing is not justified.

EBID's complaint that this Court's previous rulings guarantee that a legitimate accounting will show no net revenues by the State from which the Federal Defendants would owe Subsection I credits to EBID refers to matters that were painstakingly considered by the Court in making its previous rulings. Those rulings will not be altered, and if the effect of those rulings is as EBID claims, that is not a reason to disapprove the accountings.

Nevertheless, the Court held a hearing to discuss questions it had about the accountings. To the extent that the Court had questions about the meaning of the figures contained in Exhibit B, those questions were answered adequately at the June 27, 2006 hearing.

*2. EBID's Specific Objections to Accountings - Exhibit A - State Recreation Lease*

Exhibit A is the State's accounting related to the recreation lease for the State's operation of Elephant Butte and Caballo Lake State Parks. Exhibit A indicates that the State's expenses, for operation and maintenance and for capital improvements, have exceeded the State's revenues from the two State Parks in each year since 1990. Therefore there have been no net profits in those years to be credited to the Plaintiff Irrigation Districts from the State's operation of the State Parks under the recreation lease. As for the years 1984 to 1989, Federal Defendants assert that "it is reasonable to assume that the years 1984 to 1989 would have also resulted in combined losses for the two parks . . .." Fed. Defs. Memo. at 2.

EBID does not dispute the reasons for the lack of State Parks' records from 1984 to 1989, and does not suggest that the operation of the State Parks was profitable for the State in

6

any of those years. The only specific comments EBID has about Exhibit A bring up issues that have been decided previously: the State's deduction of capital improvement expenses from its revenues in operating the state parks; and the failure of the Secretary of the Interior to require the State to charge a fair lease fee to users of the two parks. These issues will not be revisited.

The Court will approve the accounting contained in Exhibit A. Based upon this accounting, the Court determines that the State of New Mexico has had no net profits under the recreation lease for Elephant Butte and Caballo Lake State Parks in any year from 1984 to the present.

*3. EBID's Specific Objections to Accountings - Exhibit B - Rio Grande Project*

Exhibit B is the accounting for all BOR's net revenues from 1984 to the present associated with all aspects of the Rio Grande Project. It contains 11 revenue columns. The Federal Defendants contend only three of the columns pertain to the recreation lease and should be included in the accounting for crediting to the Irrigation Districts. These are: Column 1 - "Sale of Water for Recreation Areas (Net)"; Column 5 - "Recreation Lease to State of NM P.L. 89-72"; and Column 6 - "Lease of Grazing and Farm Land Subsection I." Column 10 - "Lease Lot Conveyance" shows proceeds in 2005 from the sale of leased lots.[3] The amounts shown in Columns 6 and 10 are already being credited to the Irrigation Districts under Subsection I.

---

[3] EBID complains that the proceeds of the lease lot conveyances shown in Column 10 represent a government "giveaway" of valuable lakefront property, EBID Resp. at 7. The Irrigation Districts went to Congress and convinced it to credit these sale proceeds to the Irrigation Districts as front-end credits to reduce the districts' operation and maintenance bills, apparently because the Irrigation Districts had paid for much of this land in condemnation proceedings in the early 1900's. EBID acknowledges that sales of acquired and withdrawn lands "are not likely included within Subsection I's leasing of project lands," Id. at 8, but contends that Congress' decision to credit these sale proceeds to the Irrigation Districts "exhibits that body's intent that the Irrigation Districts benefit from the lands acquired and withdrawn for the Rio Grande Project" Id. at 8. It also contends that this legislation is consistent with the actions of the earlier Congresses in enacting the Fact Finder's Act, including Subsection I.

7

Column 1 represents BOR's net revenues for providing potable water to the recreation areas, as required by the recreation lease. It shows an accumulated net loss for the years from 1984 to 2005 of $226,806.73. A footnote states: "[o]ffset against profits under 43 U.S.C. § 501." Fed. Defts. Ex. B n.f. EBID makes no specific objection to Column 1. At the June 27, 2006 hearing, the Court noted that in the years 1985, 1992, and 2000 Column 1 shows net profits of $1,059.60, $7,774.66, and $175.53, respectively. Since Subsection I of the Fact Finder's Act requires that net profits be "credited annually," 43 U.S.C. § 501, the Court inquired at the June 27, 2006 hearing whether those amounts should be credited to Plaintiffs for those three years. The Federal Defendants argued that § 501 requires credits to the Irrigation Districts of "the total accumulated net profits," which justifies accumulating the net losses in Column 1 for all the years from 1984 to the present. However, the term "accumulated net profits" in § 501 refers to the time when "the water users take over the care, operation, and maintenance of a project," an event which occurred prior to 1984. Thereafter, § 501 provides that net profits are "to be credited annually." If accumulated net profits had been credited when the takeover occurred, credits beginning in 1984 would have been made annually. Therefore, in equity the Federal Defendants must credit the net profits in Column 1 to Plaintiffs for the years 1985, 1992, and 2000.

Column 5 represents the nominal monthly lease fee of $35 being paid by the State to the BOR since 2000. Column 5 shows revenues of $420 per year for each of the past six years, a total of $2,520. This is the only amount that the United States admits should be credited under Subsection I that is not already being credited. However, the Federal Defendants would offset these profits against their net losses in Column 1 for the years beginning in 2001. The Court agrees this is a proper way to account for the interplay between Columns 1 and 5.

*a. Column 2 - 1920 Act Water Sales*

These revenues, totaling $828,060.04, are, according to Federal Defendants, from the sale of surplus water to the City of El Paso, Texas, under the authority of the Act of February 25, 1920, now codified at 43 U.S.C. § 521. The Federal Defendants assert these amounts should not be included in the accounting for two reasons: first, they say the sale of surplus water has nothing to do with the recreation lease and these profits are not on their face net profits from the leasing of project grazing and farm lands; and second, they contend the act authorizing such sales of surplus water specifically provides that moneys derived from such sales are to be deposited into the reclamation fund for credit to the project. Because § 521 predates Subsection I of the Fact Finder's Act by four years, the Federal Defendants reason that these funds should not be subject to credits to the Irrigation Districts under Subsection I.

EBID objects to disallowing net revenues from these sales because the Federal Defendants have not secured a ruling that 43 U.S.C. § 521 fails to provide for their treatment as Subsection I credits. EBID suggests that it is the burden of Federal Defendants to disprove, rather than Plaintiffs' burden to prove, that these amounts should be credited under Subsection I. EBID also argues that the Federal Defendants have not established that these amounts are properly attributed to 43 U.S.C. § 521 in the first place, which it contends is a factual matter in dispute. EBID asserts that Federal Defendants have failed to explain why they include Column 1 within the scope of Subsection I, but exclude Column 2. EBID submits that the only reason for the distinction is that Column 1 has a large negative net revenue while Column 2 has a large positive net revenue, and that the reason for the negative numbers in Column 1 is that the Federal Defendants must be providing free, or severely discounted, water to the State Parks.

This presents a legal question.  Count II has always been about the recreation lease.  EBID does not suggest that the sale of surplus water has anything to do with the recreation lease or that these profits are properly creditable to Plaintiffs under Subsection I of the Fact Finder's Act.  At the hearing on June 27, 2006 counsel for EBID was unable to articulate any principled reason for inclusion of Column 2 in the accounting under the recreation lease.  Counsel for El Paso No. 1 agreed with the Federal Defendants that the proceeds from the sale of this surplus water, which was at issue in a separate lawsuit in this Federal District Court (<u>Elephant Butte Irrigation District, et al. v. United States Department of Interior, Bureau of Reclamation, et al.</u>, CV 00-1309 RB/KBM), should not be included in the accounting under the recreation lease.  The Court concludes that the profits shown in Column 2 are not properly included in the accounting.

*b. Columns 3 and 4 - Sale of Land and Release of Easement*

Column 3 is entitled "Sale of Land - Federal Property Act;" Column 4 is entitled "Release of Easement."  These revenues arise from the sale of excess lands or the release of unnecessary easements under the authority of the Federal Property Act of February 2, 1911, now codified at 43 U.S.C. § 374.  The Federal Defendants assert these amounts similarly should not be included in the accounting for the same two reasons advanced for non-inclusion of column 2, that is, that they have nothing to do with the recreation lease, and that the authorizing legislation predates enactment of Subsection I.  At the June 27, 2006 hearing, counsel for EBID conceded that Column 3 should not be included in the accounting because a sale of land cannot be construed as a lease of project grazing and farm lands under § 501.  Counsel for EBID argued, however, that Column 4 should be included because an easement, and the release of an easement, is within the meaning of "leasing" in § 501.

10

Neither of these columns is properly included in the accounting as they appear to have nothing to do with the recreation lease that is the subject of Count II of the complaint. Even if the release of easement in Column 4 could be construed as proceeds from the leasing of Project grazing and farm lands, the only item in this column appears in 1984. Thus, it would have been subsumed within the final judgment that was entered on Count I in 1999.

### c. Column 7 - Rights of Use 1939 Act Outgrants

These revenues arise from various out grants to third parties for rights of use such as utility crossings, beekeeper permits, etc.[4] The Federal Defendants assert these amounts have nothing to do with the recreation lease. Additionally, the authority for these out grants, Section 10 of the Reclamation Project Act of 1939, 43 U.S.C. § 387, does not expressly provide for crediting of the revenues to the irrigation districts or anyone else. BOR has adopted regulations at 43 C.F.R. § 429 which provide the method for charging third parties for such out grants. The regulations provide for crediting these amounts to BOR's land resource management account against land administration costs. The Federal Defendants argue that since the authority creating these revenues did not arise until long after the enactment of Subsection I, they should not be deemed to be included within the intent of the language in Subsection I relating to net profits from project grazing and farm lands.

EBID argues that these revenues are likely derived from the "leasing of project grazing and farm lands" under Subsection I. Even so, the items in Column 7 are not within the ambit of

---

[4] This column includes $12,530 paid via stipulation to the Irrigation Districts from the Court Registry. *See* Doc. Nos. 314, 385 at 20).

Count II and the recreation lease.  And if they were, they would be offset by the losses shown in Column 1 (except for the year 2000).  Column 7 should not be included in the accounting.

### d. Column 8 - Power

At the June 27, 2006 hearing, counsel for EBID argued vigorously that the consideration for the 1937 contracts between the Irrigation Districts and BOR was the Irrigation Districts' relinquishment their power privilege in exchange for the benefits of Subsection I.  However, these amounts have not been shown to have anything to do with the recreation lease.  Also, they are *de minimis* ($5 per year).  Thus, Column 8 is not properly included in the accounting.

### e. Columns 9 & 11 - Sale of Scrap & Miscellaneous Receipts

These revenues arise from sale of scrap, or from unidentified sources.  The amounts are "nominal" and there has been no showing that they should be included in the accounting.

THEREFORE Federal Defendants' Motion To Approve Accountings is GRANTED, in part:

1. The accounting presented in Exhibit A is hereby approved;

2. The accounting presented in Exhibit B is hereby approved with the exception that the Federal Defendants must credit to Plaintiffs the net revenues in Column 1 of Exhibit B for the years 1985, 1992, and 2000;

3. The Federal Defendants may omit from the accounting under Count II those amounts shown in Columns 2, 3, 4, 7, 8, 9, 10 and 11 of Exhibit B.

FURTHER, the Court will enter final judgment on Count II and dismiss the case after receiving comments from the parties as to the form of the judgment.

_____
SENIOR UNITED STATES DISTRICT JUDGE